The Honorable the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. Vassay of the United States and this Honorable Court. Be seated. Welcome everyone this morning. We have four cases so we will get right into it but first I want to acknowledge and say our thanks for Judge Haynes for sitting with us today. It's exciting always for us to have folks participate in this with us. So without further ado I think we'll just get straight into our first case of the day which is number 224360 United States v. Luong and Mr. Terpening. Am I saying that right? Okay. Whenever you're ready. May it please the court I'd like to lead with some observations that I think are common to all of our three issues on appeal. The principal observation being that what permeates all three decisions of the district court are conclusions and stereotypes which is reflected in number one the lack of any evidence supporting the two enhancements that we are contesting on appeal including the permanent injury enhancement, the lack of evidence supporting the notion that Lee was a vulnerable victim, and certainly the lack of evidence that Luong targeted Lee because of any unusual vulnerability. And that is also reflected in the lack of reasonableness involved with Lee deciding to remain with Luong under the circumstances. Our position would be that any reasonable person in Lee's situation would get as far away from Luong as quickly as possible as she could and certainly Lee had the ability to do that. And the deficiencies in terms of evidence are also reflected in the lack of see enter. It's our position that far from encouraging or conveying to Lee that she would suffer serious harm if she remained with Luong. If Luong had considered her actions what she would have concluded would be that they were driving Lee away. And again Lee had every opportunity to get away if she could. And so with that I'd like to start with our first issue which is that there was insufficient evidence to imply the enhancement for permanent scarring and the court made a clear mistake in the law there of course is that the permanent decision needs to be based on evidence as to the nature, severity, and likely duration of the injuries. And the example that we most rely on is the Gallegos case which is of course a 10th Circuit case. I think we miscited it at least once in our brief as forth, but it's a 10th Circuit case. And there there was a kidnapping where the victim's eye was injured during the process of the kidnapping. And the court went through somewhat of an analysis. I think ironically a little bit more of an analysis than the court did in our case. But the court didn't make any specific findings about what evidence supported the notion that the injury would be permanent. And that's the problem here. Here if the court reviews the sentencing transcript and the pre-sentence investigation report, we've got a situation where there's no evidence that the injuries were likely to be permanent. And that's particularly problematic because at the trial the physician who treated Lung the day that she kind of turned herself in, or Lee rather, the day that she turned herself into the hospital testified. So the the treating physician was available. The government could have asked him at the trial are these injuries likely to be permanent, but the government didn't do that. And the government could have brought the treating physician back for sentencing and said are these injuries likely to be permanent. But the government didn't do that at all. In fact, the government never presented an expert or any doctor or physician on the issue of whether Lee's injuries were likely to be permanent. Not at sentencing, not during the pre-sentencing process, not at trial, never. Turning to the PSR, the pre-sentence... So is it your position that you have to have expert testimony? Absolutely not your honor. I'm just trying to point to the Not only was there no expert testimony or physician testimony, but the PSR simply made a conclusory statement that it was quote evident from the photos that the injuries were permanent. But the injuries were also taken the day that Lee turned herself in. And so if you one looks at the photographs there's some scarring and bruises in it and admittedly some of the bruises look pretty pretty bad. But that says nothing about the condition that Lee was going to be in years later. And then the only other piece of evidence that gets kind of passed over at sentencing is at one point Judge Bell very wisely says well what evidence do I have about the injuries right now? And the government's response is well as we were putting together our sentencing memo a year ago our agent interviewed Lee and looked at her injuries and thought they still look pretty bad then. So problem with that is number one that was a year before the actual sentencing hearing occurred. How long was it after the original photos? A couple years. So the district court can't find as a matter of sort of common human understanding that if I suffer some really bad injuries and have some really bad bruises and have what looks like scarring and they're still there a couple years later that our experience as people suggests to us that those are likely not going away? I think it could but simply relying on an agent proffer is too weak to do that. So for example if there have been better evidence a couple years later evidence from other right before sentencing or maybe the agent actually got on the stand which she didn't do and testified that I saw this or maybe a video was taken but but here and I've thought about your honor's point at length but the distinction here is that there's there's no actual evidence at the sentencing hearing. It's just it's just the proffer from the prosecutor about what the agent saw a Did the defense attorney object to that? The defense attorney objected to the enhancement. But did they object to the proffer? I don't think so your honor. And do you think that it's common that there are proffers made at sentencing so why is that improper here? I think it's improper here because of the level of scrutiny that the law requires for the court to apply to that enhancement. It's a four-point enhancement. It's a significant enhancement. A proffer from an agent is just not sufficient evidence for the court to rely on in that scenario and our position would be in terms of the objection. What's your best, what is your authority for that proposition or your best authority for that proposition? GAIA goes to the commentary to the enhancement the application notes to that sentencing document. You can't rely on a proffer that's not objected to? It just requires the court to point to specific concrete evidence your honor and our position would be that the evidence here was too attenuated. If the court has no other questions I'll move on to our next issue which is that here there is insufficient evidence for the vulnerable victim enhancement really in at least two ways. Obviously the law there is that the steps for applying that enhancement are that the court has to determine whether the victim was unusually vulnerable and then the court has to decide if the defendant knew about that and then it has to establish, the court has to establish a nexus or a connection and decide how the defendant selected the victim because of that particular vulnerability. As we discussed in our brief it's improper to assume vulnerability based on stereotypes like language skills or where a person is from or education level and our position is that at best that's what the court was doing here. Here there's nothing, there's nothing extra, there's nothing there's nothing in the court's explanation of why the characteristic whatever the characteristic was and it's a little bit difficult to tell from the transcript made Lee particularly vulnerable and how long targeted that vulnerability. So turning to the facts here and I also point out that under the case law the vulnerable victim enhancement normally applies in extreme very dramatic circumstances such as where the victim is restrained, locked up, subjected to particularly unusual humiliating behavior, physically made so that the victim can't leave. So compared to that with the facts here what did the district court make, make, think made Lee particularly vulnerable? It could have been Lee's fifth grade education but beyond the fact that she had a fifth grade education there's nothing suggesting that that would make her vulnerable and I think common sense can and life experience as your honor points out can show that plenty of people with a fifth grade education or who didn't complete school can do really well. I mean education worked out for us but there's all kinds of paths to success in life. Certainly the fact that Lee was from Vietnam in and of itself wouldn't make her vulnerable. Lung was from Vietnam too and certainly that Lee had limited language skills wouldn't make her vulnerable because in terms of getting help she was living with her family near the nail salon who was supportive and ultimately did get her help and she could have communicated in any way to them what was going on. Instead what we've got are factors that show that in many ways Lee was the opposite of vulnerable. She had owned and operated her own nail salon for years. When she sold it she sold it for a $45,000 profit. When she got that $45,000 she had the good sense to use the money to pay off her credit card debt. So obviously educational level is not in this case a negative reflection on her intelligence or anything like that. She had assets such as a Lexus and she had a driver's license and she drove that Lexus to and from work at Lung's She was again not isolated. She lived with her aunt who was a successful businesswoman in the area and other family members who she communicated with every day about how she was doing and she had lived in the US for two decades and was a naturalized citizen. So a lot of the time you see the victim and the threat is well I'm going to have you deported if you don't stay here working at my nail salon but that wasn't a risk to Lee. So in terms of who she was and what she was doing she had every opportunity to escape and and she didn't. Now our third issue... What about the lack of familiarity with the legal system? Didn't the judge also cite to that? Neither of them were particularly familiar with the legal system and the issue there was that Lung told Lee that she owed her $180,000 and other debts because of Lee's mistakes in the nail salon and there was evidence that that Lung did that with other employees as well that she charged employees for mistakes. One of the statements in the government's brief that I disagree with is Lung never told Lee that you have to keep working at my nail salon because you owe me this $180,000. She said you need to make money because you owe me this $180,000 and there's an issue where Lee at some point thought about going to work for her mom or her aunt's gas station and Lung said to Lee well you won't make as much money at the gas station. She didn't say you can't go to work at the gas station. But not just you owe me $180,000 that if you don't pay me back you'll go to jail, right? That's an additional statement. Right and that goes to our next kind of point which is reasonableness is part of the analysis here. Lee could have figured out in a lot of ways that there's no debtors jail in the United States. Lee could have asked her aunt who was a successful businesswoman. She could have gotten on the Google when she got home every night to where she lived. Isn't this where we're talking about a non-native US citizen, a non-native who has a fifth grade education who moved from a country with a very different legal system. Like why doesn't that all relate? I mean I understand you're making this argument principally about sufficiency but to me it also seems tied up in the vulnerable victim. Why can't the district court say these sorts of things make this person more vulnerable? We don't even know from the record whether there's a debtors jail in Vietnam. We don't even know that she came from a system where you could go to jail for not paying a debt. There's no evidence about that. Whether you can in Vietnam that this individual the court might have concluded that this individual might. I mean presumably people don't make threats that they don't think will work. Presumably the reason the defendant threatened her with that is because the defendant had some reason to suspect that it would have advocacy to threaten her with that. We don't generally make threats that the other person will obviously know are false. The best the record shows is that she long threatened Lee with that because Long wanted to get $180,000 from her groundlessly. And I think there's no question that whenever Long could groundlessly get money from people she did that. And as I concede in the brief I think there's no question that Long seems like a pretty mean person. But the problem in this case, my biggest concern about this case, is Long could have been charged with all kinds of other things. She could have been charged at the state level with assault and battery. She could have been maybe charged with some sort of fraud or extortion or something like that. But she wasn't. So the issue is did she do the one crime that she was convicted of? And there's as with the other issues there's just our position is there's not a sufficient connection between the facts that Judge Bell had to deal with. And Judge Bell concedes this several times during his sentencing transcript and the enhancements that he wound up applying. And that goes straight on through to the sufficiency of the evidence to convict Long in the first place, which I'll use my last two minutes to address if that's okay with the court. So there's really two issues there. There's the reasonableness issue that we've been talking about. Would a person, a reasonable person, in Lee's position remain under the circumstances? And the the relevant facts on that issue seem to be that Long physically lashed out at Lee for a period of time. As Gerard points out, she told Lee that she owed her money and could go to jail if she didn't pay it. And then the third point that the court will see, and I'm sure has already noticed, is this threat that she would blind Lee to her family if she, for reasons that are sort of unclear. And again, I would suggest that with that what I would call defamation threat, what the court wants to look at is how reasonable it would be for Lee to feel threatened and think that she had to remain because of that threat. And there I would point to the fact that Lee, again, had assets. It wasn't like she was living in poverty and if her aunt kicked her out, and there was no evidence by the way that her aunt would have kicked her out. But if her aunt kicked her out, it's not as if she wouldn't be able to finance another place to live. And the mere threat of defamation, which again I think is based more on cultural stereotype than evidence that was actually in the record, I would suggest is not sufficient to apply that enhancement. And the last point with my to cause Lee to believe that she would suffer serious harm if she didn't continue to work. And again, I would just suggest there that if anything, Long's behavior was driven by anger issues and other problems. And that looked at rationally, she would conclude that her behavior was driving Lee away or would have driven Lee away. Thank you. There's no questions. Thank you. Great. May it please the court. Amy Ray for the United States. Your Honor, the District Court properly denied Ms. Long's motion for judgment of acquittal and her sentence is procedurally reasonable. I'll start where Mr. Terpening left off with the sufficiency of the evidence. So for sort of three basic reasons, the District Court properly denied the motion for judgment of acquittal. First, the evidence was strong that Long used each means that were described in the statute to compel Lee to continue working for her. Second, because of the extent of the abuse and Lee's particular vulnerabilities, her acquiescence to that abuse and the decision to continue working was objectively reasonable. And third, we know from Long's use of Lee's vulnerabilities and the explicit threat that she would go to jail if she did not pay the money and continue working that Long intended to compel Lee to continue working. And it doesn't matter actually whether she intended to compel her to work for Lee, for Long, or for someone else. The issue is whether she, the statute is violated if you compel someone to keep working. And the evidence was plenty for the jury to find and infer as it did that the abuse that her decision to stay was objectively reasonable and that Ms. Long intended her to stay and to compel her to stay. In terms of the, I'll go to, I think the two main points are the objective reasonableness and I'll say three things about that. First of all, it was objectively reasonable. It's sort of a hybrid standard, whether her decision to stay is objectively reasonable but under the circumstances her particular vulnerabilities. And I would cite three things. It was objectively reasonable because she feared extreme violence, which she suffered at Long's hands. She feared jail and arrest and she said that over and over again in her testimony. And she feared, excuse me, family disclosure. There was evidence that in the Vietnamese culture, familial shame is a powerful motivator. And in this case, she feared that Luong would do as she promised over and over and over again and tell her aunt, with whom Lee was living rent-free, that Lee had secured money, borrowed money, ostensibly in the aunt's name. And she was worried about that. So worried that actually when Ms. Luong went to, followed her home and passed her and went toward her house, Lee took a left turn, went to the lake and tried to commit suicide. Turning to the intent element, also sort of three basic reasons that I think that the evidence supports that Luong intended her to be compelled to continue working for her. One, the threat to go to jail. Two, the threat to tell her aunt Mai. And Lee was different from any other employee. And that's one of the factors that a court will consider. Does the defendant treat this defendant differently, this victim rather differently from others? Lee was not Luong's only employee, but she was the only employee that she took to the back room and beat to a pulp. If this court doesn't have further questions about the sufficiency, I'll turn to the sentencing issues. Beginning with the vulnerable victim issue. Can I start with the scarring because I think I have fewer questions about that. Sure. Is the government's view that scarring is ipso facto sufficient to meet this enhancement? And let me tell you why I'm asking you that question. Sure. I look at the language of the guideline and it says injury involving substantial risk of death. That's pretty intense. Loss or substantial impairment of the function of a bodily member organ or mental faculty that is likely to be permanent. That's less extreme but still pretty extreme. Or an obvious disfigurement that is likely to be permanent. And I guess, I'm not sure this case really raises it because I don't seem to see the defendant arguing about this prong a bit. But it doesn't strike me that literally any scar is an obvious disfigurement. Is the government's view that any scar is obvious disfigurement? The government's view is that any permanent scarring satisfies the definition of obvious disfigurement. I have a scar on my hand that I got while walking around Charlottesville during lockdown. I'm not sure I would describe that as obvious. You can't see it from here but there is a scar right here on my hand. You would say that is obvious disfigurement? I would say that permanent scarring is obvious disfigurement. Yes. I mean we can debate what disfigurement really means and I will agree and concede that that's a term that one might say is, they would say yes I've been disfigured particularly if you have multiple scars. But I will say that in this court's decision in Taylor, in the Eighth Circuit's decision in Minor, and the Seventh Circuit's decision in Phillips all held that permanent scarring satisfies the guideline. Well they can but that it necessarily always does. Again I'm not sure this matters here because whatever my sense of like one could have minor permanent scarring this seems pretty clearly not to be it but I guess that's what I'll say. In order to rule for you on this issue do we have to say that literally any scar ever meets the standard? No I don't think so I absolutely not because in this case we have at least five scars, three on her back, one on her upper arm, and one on her I think it was her chest actually that the agent found three years later, three years after the offense. So this court doesn't have to go so far as to say all permanent scarring but I guess I'll just leave it with that. But I just I guess I would also say that the case law seems to support that permanent scarring does satisfy the... It seems very hard for me to square with what the guidelines actually say. I don't disagree your honor. I don't disagree and I don't think your honor has to meet that and I will also just throw in there that we're under a clear error standard of review. That doesn't... The meaning of a word is not something we defer to district courts about. That's correct absolutely. So if this court were to find that but but in terms of what Mr. Terpening was arguing about whether or not scarring is permanent or not the district court did not clearly err in finding that. So I guess I'll then turn to the vulnerable victim. Only scarring because I think it's important. The issue regarding a proffer from the agent a year before. How is the court supposed to consider that as evidence of permanent scarring? Your honor because first of all in terms of whether or not a court may consider a proffer, pre-sentence report in many ways is simply a proffer right of what the agents and the evidence has shown through the time. And so it's absolutely permissible in this court has held over and over again that a court may rely on information presented at sentencing that they just that is not objected to. In terms of whether it's permanent or not the best evidence is the three years and I think that it is reasonable for a district court to find that a scar that is present three years later constitutes permanent scarring. Or likely to be right? That's right. The guideline helps you or doesn't actually say permanent. It's likely to be permanent. Fair enough. Thank you Judge Hytens. So yes I mean does that answer your question Judge Patterson? Well I guess the issue is I believe in the proffer she just said that the marks were still there. Right. And so I'm struggling here with this permanent from a agent who has no medical background. The judge does not see the the pictures only pictures that the 2000 and was it 18? 18. It just seems as if it's insufficient to come to a conclusion that is permanent scarring based on the testimony of an agent who says yeah I looked last year and it was still there. The scars were still there. Your Honor I might agree I might be more inclined to say that it would be clear error if it was at the very time it happened. But to say three years later that a scar is not likely to be permanent I think a district court can use our own experience as people walking around on this earth who have scars. I don't know about your honors but I have scars that I they're not going away. I've had them you know no scar that I've had three years later just disappears. But I will also say that if your honor looks at the Oxford English Dictionary for example with definition of scarring it's likely to be permanent. That's what scar really means. Otherwise it's an abrasion. It's a cut. It's you know but a scar is something that stays with us. So I think that's and I guess Judge Benjamin the other thing I would say is that I don't know of any authority and haven't seen it that would suggest that a district court can't make the infer that a scar that exists years later isn't likely to be permanent. And in other words the inverse of that I would think would be really difficult to say. That I that it would I think we would be clear error to fight to look at a scar that's still present three years later. Nothing that says that a district court can't apply common sense and experience in finding that something that's been there three years later is a scar. There's no requirement in other words for a medical expert. Nothing like that. This is pretty common in pre-sentence reports to see assessments. And here the government actually did go to the length of having an agent ask Ms. Lee to to undress enough so that she could see that. Turning to the vulnerable victim increase. For three reasons actually four reasons I think the district court properly applied that increase based or I should say based on four particular vulnerabilities. And I note that the district court articulated specifically two. Mr. Terpening suggested that it was unclear. Actually the district court was quite clear. The district court said one cultural barriers basically the fear of family shame because of her cultural background. And two the district court cited her lack of experience with the legal system. In addition to that we have that she's only had a fifth grade education and she also spoke really very little English. And these are factors that courts have repeatedly cited similar factors in vulnerable victim. Which ones the ones the district court actually listed or the ones the district court didn't actually list that you'd like us to credit anyway? All of them but the ones of the cultural barriers. There's the Zong case out of the Second Circuit that I would cite that specifically refers to cultural barriers. But in many of these cases of forced labor it's not unusual for the victims to come from another country. That's common and that is often cited as a basis for this also for the increase in addition to sufficiency of the evidence. I guess I can't speak to those other courts but I think we've said pretty clearly and I'll just tell you my two biggest hesitations on this enhancement. One is we have said vulnerable victim has to be unusually vulnerable victim for this offense. Right. We've said like it's not whether someone is and so one of the problems that strikes me with this context is that people who are victims of this particular offense are already not like going to be a random selection of the population. Like forced labor victims are themselves generally it strikes me people who we as a group we would think is more vulnerable than the average member of the population. And so I guess what I'm concerned about and what triggered is what you just said which is we've said very clearly you can't say that every single person who's a victim of forced labor is a vulnerable victim. And they have to be an outlier within the category of people who are victims of this offense. And what is the evidence of that here? I want to, Judge Heintz, I'm going to respond a couple of things because I think that your Honor's statement of the law is accurate and also I think we have a little more leg room than you're describing. So yes I mean under Singh it says two things. One, that's this court's decision. One, is the victim more vulnerable than the world of possible victims? Okay. And two, did the victim specifically because of her vulnerabilities? So and I'll refer the court also to a case called Callum Lim in Seventh Circuit which discusses this very thing and I found it useful. Anyone can be a victim of forced labor. I could be a victim of forced labor if you beat me badly enough and you put me in a room or did other things to require that I write. So although we is that targets vulnerable people because that's the easiest people to target. It's not exclusive to that. But even within that universe, let's take your Honor's sort of and the two things that I think rendered Ms. Lee especially vulnerable. One, her fifth grade education is especially, she had a very very low education. And in her case the role of the familial shame that she feared. Well I guess I'll take three. I also think the lack of experience with the legal system and the fact that they were threatening arrest. In many of these they're threatening deportation but it's unusual to see a case where they're actually threatening arrest. So the fact that she had a fifth grade education in other words and very little experience. The fact that she couldn't speak English well when considered in light of the particular abuse that was being exacted makes her especially vulnerable. Am I correct that the two things you just emphasized are the two ones the District Court didn't say? Yeah that's your Honor. I don't think honestly Judge Heitens that that's a problem for us because this court can't. I mean the question that before this court is did the District Court clearly err in finding that she was a vulnerable victim? No, no, no. We have repeatedly vacated sentencing's where we concluded the District Court inadequately explained its decision. We do that all the time. That's fair but I don't think the District Court inadequately explained it. That's sort of a different question from whether or not there are other facts the District Court could have brought to bear. And so I do... The second one, why doesn't that one your friend on the other side said it starts to sound like stereotypes. That second one and I think the District Court appropriately expressed some hesitation about this. Like there's a version of the second factor that can start to sound like every single Vietnamese immigrant is a vulnerable victim because they come from a culture that you would you like to respond to the argument that that is that every single Vietnamese immigrant would be a vulnerable victim. I would agree that it would rely on stereotypes except we have specific evidence in this case given by her cousin's wife that this is a problem and that this is something that is part of the Vietnamese culture and part of their world. Let me ask you this. So do characteristics of the defendant in this case, does that matter? I mean because when you look at the they have a whole lot of similarities. They both own the business, nail salons, they both are certified nail techs, they had training, run profitable businesses. I mean don't we have to look at at the defendant here and how they compare to each other if you're trying to define unusually vulnerable? I think that helps us Judge Benjamin and I'll tell you why. I think the fact that they were very similar helps us because she knows, Luong knows exactly what's going to happen, exactly how fearful Leigh would be if she threatens to go to her aunt. She knows that Leigh ultimately didn't succeed in her business, that she sold it at a profit and gave the profits to the boyfriend. Mr. Terpening suggests that this makes her a smart person but Luong told her over and over again, you're stupid, you're fat, and you're stupid because you give away your boyfriend. So I guess what I'm saying is they had a very close relationship for a long time before. Interestingly I do want to really point one thing out that I found and I don't think I mentioned in the brief but I'm not sure I illuminated it as well as I should have. The minute that she pays off the $10,000 loan that she took from Ms. Luong, it's within a couple of months that Ms. Luong starts getting money from her in other ways and starts extorting. So she knows this victim and Ms. Luong, particularly if your Honor looks at that video, there's one who is vulnerable and there is one who is not. I was actually just going to ask you about this. This is the part where the district court says especially if you watch the video. But by this point, am I correct, the offense is already ongoing, right? That the video, this abuse that's it's not whether they become vulnerable later. They have to be vulnerable at the moment of the offense, right? Like people can become vulnerable as a result of being victimized but that doesn't mean they were a vulnerable victim. And so when I look at what the district court actually said, one of the things that this is probably the most prominent thing it says on JA 690-691, it's relying on that video and I guess I'm troubled understanding how she looks after the crime is ongoing can tell us whether she was vulnerable to the crime before it started. Could you help me with that? Well, I think that it is after it's ongoing but it hasn't been going on. It's the physical, the extreme. It's very clear. You have to be vulnerable at the moment I select you as a victim. Right. So how can the way that the victim is behaving after she's already been victimized tell me whether she was vulnerable at the moment I selected her as the victim? Judge Heitens, honestly when I I don't I agree that I guess I'm comparing it to somebody like myself who's you know after a certain period of time of course but there's still a she just looked and seemed like someone who was would probably always have been coward. Now that may be fair or not fair but I want to go back to the point that there are lots of ways we know she was vulnerable and she was vulnerable from the very beginning because she changed her behavior. She was scared from the very beginning and with there's lots of evidence of that. What about the the district court also referenced the fact that he observed her testify. Right. And so but not with much description as to what the vulnerability would be. Mm-hmm. So how do you think we should view that that that justification that he provided? Your Honor, I think Judge Heintz that that is still critical even though it was later and he doesn't describe what that is. I think that if you look at the video if you if you understand she has a fifth grade education and even by reading her testimony you get a sense of how scared and vulnerable she was. You know I don't know that I can give a better answer than that. I just I So let's assume that let's assume that we say she's vulnerable, unusually vulnerable. Right. How are you gonna get around this this nexus that she was targeted by the defendant in this case? When in fact it's my understanding from is that she approached she approached the defendant the victim approached the defendant and requested money and offered to work in the nail salon. So how do you get around Gary that says that it has to be targeted at the onset of the criminal activity? Because the criminal activity starts when she starts getting money from her unwillfully right or with so in other words she pays off that debt and then when she's no longer indebted to Ms. Luong she starts taking advantage of the vulnerabilities by requiring that she turn it she actually made her write three checks for that total $5,000 without putting a date on it. So the question is and so in terms of intent though I think your honor is looking at the intent requirement and I think that there were several pieces of evidence. We know that she intended her to compel her to keep working because she said you have to pay off this debt you have to keep working. That's the best evidence and it happens that she creates that debt the minute that Ms. Lee is out of debt legitimately from the one that she asked for then Luong starts creating that debt and says you have to work for me. The second thing we know is that she told her you will go to jail if you don't pay off this debt which was false and Luong knew I mean we don't have evidence that she knew that but I think it's a reasonable inference that she knew that. So the jury only has to have a reasonable inference to find that she intended to compel Lee to keep working. She created the debt she then used to that very intentionally and explicitly to require that she continue working and she made those yeah I would refer the court to JA the appendix page 230 where she says you're gonna go to jail if you don't pay this debt. She created that debt and she knew that she was vulnerable and would and she knew it right away because as soon as she asked give me three checks write them out for 2,000 2,000 and 1,000 and don't date him. There was no reason for Lee to do that. Your Honor, thank you very much. Well there was a reason for her to keep doing it which was that she wanted to extort as much money as she could from Lee groundlessly. Part of part of what I this presentation even today underscores is the poverty of the record that the district court created at the sentencing hearing. So we're sitting here or standing here debating you know how long a scar that I got on a walk is gonna last versus how long a scar that I got during my childhood is gonna last. The reason we're debating that and kind of comparing at least in this area kind of lay experience there is because we don't have the information in the record that allows us to to analyze that in a thoughtful way that we analyze everything else as lawyers and judges. We don't have a doctor's opinion. Do we need that doctor's opinion? Do we need an expert opinion? No. Do we see it in an awful lot of the cases? Yeah and this is the reason for that. In the same in the familial shame argument keeps coming up. There may have been passing testimony about familial shame from interested witnesses but there's nothing really that we can rely on. I mean even now we're making statements at oral argument like familial shame or whatever is just quote part of their world. Like we don't know what part of their world is at all. Like we have no idea what we're talking about respectfully because there's no evidence in the record that we can rely on to figure that out either. We can't just assume that because this lady's working at a nail salon and from Vietnam that she's unusually vulnerable but that's what's happening here. That's what's really going on in this case. She's no different in almost every respect from law. As she wasn't targeted she was there. Part of the government's discussion was oh there were other employees and they weren't targeted. Well they were her family members and for that matter even they were targeted. I mean my client who again probably not the world's greatest person beat her mother too during the pendency of this case. My client had an anger problem and probably a lot of other issues and she might have been charged with any number of crimes but this crime was not the approach. This discussion about the statute being violated just by compelling someone to keep working. I would suggest that there's not a case on that before the court and that it defies the reasoning of the statute for the government to argue that what Lung was trying to do was just get Lee to work anywhere. Lung wasn't trying to make sure that Lee continued to work at a gas station or some other place. Lung wasn't trying to make sure that Lee worked anywhere. She just wanted to see if she could get money out of Lee. She was perhaps trying to victimize Lee but not in the way that the statute contemplates and not so that Lee would keep working. Let me ask you also about this Gary case, the Fourth Circuit case that says that the defendant must target the victim because of the unusual vulnerability at the outset of the criminal activity. Now the government says that outset is not when she started working for her. When is the criminal activity for purposes of the outset of the criminal activity or her targeting? I don't think there's evidence in the record of that either your honor. The outset was the outset when Lee sold her salon and started talking to Lung about working there. Was it later on? That's absent from the record as well. That's another thing that we can't figure out as we stand here today. It's just sort of an empty record. For a long trial and a long case there's a lot that's missing in this record, particularly in the sentencing hearing. I see my time is basically up. If the court doesn't have any questions I'll conclude. Thank you Mr. Terpening. Thank you very much. Mr. Terpening, I see that you are court-appointed is that correct? We all thank you very much for your work in this case. We depend on it to do our work and the court is very appreciative of your work as court-appointed counsel in this case. We will come down and greet counsel then proceed directly into our second case.
judges: Toby J. Heytens, DeAndrea Gist Benjamin, Elizabeth W. Hanes